

Approved: _Ambriswold_____
ANDREA M. GRISWOLD
Assistant United States Attorney

Before: HONORABLE HENRY B. PITMAN
United States Magistrate Judge
Southern District of New York

**16 MAG 2534**

- - - - - - - - - - - - - - - - x
                             :

UNITED STATES OF AMERICA   :

                             :

         - v. -          :

                             :

SCOTT A. BEATTY,        :

                             :

        Defendant.     :

- - - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violations of
7 U.S.C. §§ 6b(a)(2),
13(a)(1) and 13(a)(5);
18 U.S.C. §§ 1343 & 2.

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

     ALEXANDER H. KURGANSKY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation (the "FBI") and charges as follows:

**COUNT ONE**
**(Commodities Fraud)**

    1.    From at least in or about January 2011 through in or about June 2014, in the Southern District of New York and elsewhere, SCOTT A. BEATTY, the defendant, while acting as the principal of an unregistered commodity trading advisor, willfully and knowingly, in connection with an order to make and the making of a contract of sale of a commodity for future delivery, to wit, off-exchange foreign currency contracts made and to be made for and on behalf of and with another person, directly and indirectly: (a) cheated and defrauded another person, and attempted to do so; (b) made and caused to be made to another person a false report and statement and entered and caused to be entered for another person any false record; and (c) deceived another person, and attempted to do so, by any means in regard to an order and contract and the disposition and execution of an order and contract, and in regard to an act of agency performed, with respect to an order and contract for and with the other person to wit, BEATTY, on behalf of his companies Peak Capital Management Group, Inc. and Peak Capital Group,

Inc., solicited more than $825,000 in funds from investors
purportedly for the purpose of trading in off-exchange foreign
currency contracts, when, in truth and in fact, BEATTY converted
some of the money to his own use and used some of the money to
pay purported returns to other investors to whom he falsely
reported positive trading results and account balances.

(Title 7, United States Code, Sections 6b(a)(2) and 13(a)(1)and
(a)(5); Title 18, United States Code, Section 2.)

## COUNT TWO
### (Wire Fraud)

2.      From at least in or about January 2011 through in or
about June 2014, in the Southern District of New York and
elsewhere, SCOTT A. BEATTY, the defendant, willfully and
knowingly, having devised and intending to devise a scheme and
artifice to defraud, and for obtaining money and property by
means of false and fraudulent pretenses, representations, and
promises, transmitted and caused to be transmitted by means of
wire, radio, and television communication in interstate and
foreign commerce, writings, signs, signals, pictures, and sounds
for the purpose of executing such scheme and artifice, to wit,
BEATTY, on behalf of his companies Peak Capital Management
Group, Inc. and Peak Capital Group, Inc., solicited more than
$825,000 in funds from investors purportedly for trading in off-
exchange foreign currency contracts, when, in truth and in fact,
he converted some of the money to his own use and he used some
of the money to pay purported returns to other investors to whom
he falsely reported positive trading results and account
balances via email and other interstate wires.

(Title 18, United States Code, Sections 1343 and 2.)

        The bases for my knowledge and for the foregoing
charges are, in part, as follows:

3.      I have been a Special Agent with the FBI for
approximately six years.  I am currently assigned to a squad
within the FBI that is responsible for investigating violations
of the federal securities laws, as well as wire, bank, and mail
fraud laws and related offenses.  I have participated in
numerous investigations of these offenses, and I have made and
participated in making arrests of numerous individuals for
committing such offenses.

4.      The information contained in this affidavit is based

upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources, including documents and information provided to me by others.  Because this affidavit is prepared for limited purposes, I have not set forth each and every fact I have learned in connection with this investigation.  Where conversations and events are referred to herein, they are related in substance and in part.  Where dates, figures, and calculations are set forth herein, they are approximate.

## Background

### The Defendant and Relevant Entities

5.    Based on interviews I have conducted of victim witnesses, my review of reports documenting interviews of other victim witnesses, my review of documents provided by victim witnesses, my review of electronic communications between SCOTT H. BEATTY, the defendant, and others, and my review of bank and brokerage account records for accounts affiliated with BEATTY, Peak Capital Management Group, Inc. and Peak Capital Group, Inc., I have learned, among other things, the following:

a.    At all times relevant to this Complaint, BEATTY was the founder, owner and operator of Peak Capital Management Group, Inc. ("PCMG"), a Florida corporation formed by BEATTY with a principal place of business in Ogden, Utah.  During certain times relevant to this Complaint, BEATTY also conducted business in the name of Peak Capital Group, Inc. ("PeakCap," together with PCMG the "Peak Capital Entities"), also a Florida corporation formed by BEATTY with a principal place of business in Ogden, Utah.

b.    At all times relevant to this Complaint, BEATTY was the sole owner and operator of the Peak Capital Entities. At various times relevant to this Complaint, BEATTY operated the Peak Capital Entities from his home in Roy, Utah, as well as from a commercial address in Roy, Utah, at which BEATTY maintained a home improvement business.

c.    At all times relevant to this Complaint, BEATTY acted as the principal of the Peak Entities, an unregistered commodity trading advisor, as defined under Title 7, United States Code, Section 1a(12).

d.    At all times relevant to this Complaint, BEATTY maintained a bank account in the name of PeakCap (the "PeakCap Account") at a U.S. bank not named herein ("Bank-1").

e.    In or about April 2011, BEATTY opened a trading account in the name of PCMG (the "PCMG Brokerage Account") at a U.S.-based online broker not named herein (the "Broker"). BEATTY was the only authorized trader on the PCMG Brokerage Account.

f.    Upon opening the PCMG Brokerage Account, BEATTY was advised that the Broker utilized a bank located on Wall Street in Manhattan, New York ("Bank-2") to process incoming and outgoing U.S. dollar transactions for brokerage accounts maintained with the Broker. At all times relevant to this Complaint, Bank-2 was used to process transactions for the PCMG Brokerage Account.

g.    At various times relevant to this Complaint, BEATTY maintained the domain and website www.peakforex.com (the "Domain" or the "Website").

h.    At various times relevant to this Complaint, BEATTY controlled at least three email addresses, which were all hosted on the Domain: scott@peakforex.com; japandesk@peakforex.com; and info@peakforex.com (collectively, the "Peak Email Addresses").

## Overview of the Scheme to Defraud

6.    From at least January 2011 through at least June 2014, SCOTT A. BEATTY, the defendant, raised more than $825,000 from more than forty-nine investors, purportedly for the purpose of trading in off-exchange foreign currency contracts known as "forex." The majority of the investors were Japanese citizens who, under 7 U.S.C. § 1a(18) of the Commodity Exchange Act, were not authorized to trade leveraged, margined or financed forex in individually managed accounts.

7.    From at least January 2011 through at least June 2014, SCOTT A. BEATTY, the defendant, solicited the investments, individually and for the Peak Capital Entities, by falsely representing to investors, including on the Website and through electronic mail, that BEATTY  was an accomplished forex trading advisor earning annualized returns as high as 43.9 percent. In truth and in fact, BEATTY was not an accomplished forex trader, as his trading was consistently unsuccessful and the trading results posted on the Website by BEATTY were false and did not reflect the limited forex trading actually conducted by BEATTY.

8.    SCOTT A. BEATTY, the defendant, further solicited

4

investments for forex trading by representing that he would maintain individual accounts for each investor. In truth and in fact, BEATTY failed to create individual trading accounts and instead utilized PCMG's single trading account. BEATTY used just $125,000 of the $825,000 in investor funds for trading.

9.      Moreover, notwithstanding the representations of SCOTT A. BEATTY, the defendant, concerning PeakCap's consistently positive forex performance, BEATTY's forex trading was remarkably unsuccessful. In fact, between January 2011 and June 2014, BEATTY lost more than $71,000 of the $125,000 in trading, including commissions and fees.

10.      In addition to the client funds lost in forex trading, SCOTT A. BEATTY, the defendant, routinely converted investor funds to his own use in the form of cash withdrawals and debit card purchases, including at least $517,000 for, among other things, BEATTY's personal expenses such as restaurant bills and retail purchases.

11.      To prevent or forestall redemptions, and continue to raise money to fund his scheme, SCOTT A. BEATTY, the defendant, generated fictitious account statements, which he posted through a client portal on the Website.

12.      Between 2011 and the present, to hide his trading losses and continue to fund his personal lifestyle, SCOTT A. BEATTY, the defendant, used new investor funds to pay back other investors in a Ponzi-like fashion. In total, BEATTY distributed approximately $184,000 back to investors from funds deposited by new investors.

### The Website

13.      I have reviewed documents provided by the U.S. Commodity Futures Trading Commission ("CFTC") and I know that in or about the summer of 2013, in response to questions from a representative of the CFTC, SCOTT A. BEATTY, the defendant sent several emails acknowledging, in sum and substance, that he was the owner and operator of the Website and that he was responsible for the Website's content and layout.

14.      Based on my review of screenshots of the Website as it existed at various times between 2011 and 2014, I have learned, among other things, the following:

a.      The Website referred to "Peak Forex" as an investment management firm operating as part of the Peak Capital

Entities.

b.    At various times relevant to this Complaint, the Website for the Peak Capital Entities included a section entitled "Managed Forex Accounts," which stated, among other things, the following:

i.    "Peak Forex is a USA based investment management firm that specializes in providing individual and institutional investors access to asset management in the foreign exchange market.  The investment objective of our managed forex account is consistent capital appreciation achieved by employing the trading discipline and risk management developed from over a decade in the financial markets."

ii.    "At Peak Forex, our fee structure is completely performance based, so the success of our firm is directly dependent on the success of our clients."

iii.    "[Y]our account will have the benefit of the knowledge, experience, and resources of professional traders and money managers gained from many years in the financial markets."

c.    The Website also contained information on performance metrics.

i.    For example, a snapshot of the website from December 2013 represented:

Performance
Last Year = +23.6 percent
Year to Date= +1.8 percent
Last Month= +1.8 percent

ii.    A chart of monthly returns, on a yearly basis, indicated that returns were between 23.1 percent and 43.9 percent for the period between 2005 and 2013.

d.    In addition, the Managed Accounts section of the Website concluded with a note "From the Fund Manager, Managing Director Scott Beatty," which, among other things, warned prospective investors about the risk of investing through forex websites:

The forex market is a high risk endeavor and
is one that should not be entered into
lightly and without due diligence.  That

risk is only further heightened by the ever
increasing number of new websites promising
phenomenal gains. All too often we hear the
horror stories from the victims of these
companies.

A good rule of thumb is that if it sounds
too good to be true . . . it probably is.
The vast majority of what you will find as
the performance for many of these firms are
backtested results . . . it simply means
that the results were never actually
achieved. These come from mechanically
designed trading systems that can easily be
created or purchased for charting software
on dozens of internet sites.

## The Peak FAQ

15.  In addition to the information provided on the
Website, SCOTT A. BEATTY, the defendant, provided certain
prospective investors with a list of frequently asked questions
concerning Peak Capital forex accounts. One such document,
which BEATTY sent to a prospective investor in or about the
spring of 2011, included the following representations, among
others:

a.   "Numbers based on backtesting or hypothetical
situations are never used."

b.   "Peak currently handles more than $21 million
worth of investments."

## Victim Investors

16.  Based on my participation in the interview of a victim
investor ("the Victim Investor") of SCOTT A. BEATTY, the
defendant, a review of documents provided by the Victim
Investor, and a review of electronic communications between the
Victim Investor, BEATTY, and others, I have learned the
following:

a.   The Victim Investor, a Japanese professional
working for an office supply company in Japan, learned about
Peak Capital in approximately January 2012 through the Website.
At the time, the Victim Investor was looking to invest in forex.

b.    In January 2012, prior to making an investment, the Victim Investor reviewed the Website and, in particular, the historical trading performance touted on the website.   Based on this review, and on email communications initiated via the Website, on or about January 2012, the Victim Investor invested approximately $14,000, purportedly for a forex managed account, via a wire transfer to the PeakCap Account.   The Victim Investor based this investment largely on the annual return statistics provided on the Website.

c.    In approximately February 2012, the Victim Investor began receiving account statements through an online investor portal maintained on the Website.   The initial statements indicated positive monthly returns.   In approximately April 2012 and June 2012, the Victim Investor made two additional investments, for a total principle investment of approximately $50,000.

d.    Between April 2012 and January 2014, the Victim Investor continued to receive monthly account statements, which reflected positive monthly returns and an annualized investment return of more than 20 percent.   As of January 2014, Victim Investor-1 believed his purported managed account at Peak Capital had a balance of $68,431.20.

e.    In or about early December 2013, when the Victim Investor viewed his October and November 2013 statements on the Website, he observed that the statements appeared to be missing certain relevant information that had been provided in prior statements, including the commissions charged to the account for forex trading purportedly conducted in those months.   On or about December 1, 2013, the Victim Investor sent an email to one of the Peak Email Addresses asking, in sum and substance, why the account statements did not reflect detail on net commissions.   The next day, the Victim Investor received a reply email stating, among other things, that the delay was due to the office being closed for the Thanksgiving Holiday.

f.    In or about February 2014, the Victim Investor learned that in approximately January 2014, another investor had unsuccessfully attempted to redeem that investor's forex investment in Peak Capital.

g.    On or about February 27, 2014, the Victim Investor sent an email to one of the Peak Email Addresses asking to withdraw funds from his account at PeakCap.

h.    On or about March 4, 2014, after receiving no

8

response to the prior inquiry, the Victim Investor sent an email to all three of the Peak Email Addresses requesting a reply to his request to withdraw funds.  The Victim Investor also submitted a redemption request, via the online client portal on the Website, requesting to redeem the balance of his investment. Victim-1 received no response to his request.

        i.    The Victim Investor never received a response and no funds were returned by BEATTY or any Peak Capital Entity.

## Other Victims

    17.  Based on my review of reports of documentary interviews of other Japanese victim investors of SCOTT A. BEATTY, the defendant, my review of documents provided by certain of those victims, and my review of transactions in the PeakCap Account, I have identified at least four dozen victim investors who wired money to the PeakCap Account for purported Peak Capital forex managed accounts (the "Other Victim Investors").

    18.  As with the Victim Investor, I have learned that the Other Victim Investors invested based on the representations on the Website and maintained their accounts based on the positive statements posted to the client portal on the Website.

## BEATTY's Loses Investor Funds Through Unsuccessful Trading

    19.  Based on my review of records for the PCMG Brokerage Account for January 2011 through April 2014, I have learned, among other things, the following:

        a.    Despite promises by SCOTT A. BEATTY, the defendant, that he would create individually managed forex accounts for investors, no such accounts were created.  All trading that did occur took place in the PCMG Brokerage Account.

        b.    BEATTY's limited trading was consistently unsuccessful.  Of the $125,000 in investor funds BEATTY actually used for forex trading, he lost more than $71,000, including commission and fees.

## BEATTY's Misappropriatesthe Majority of Investor Funds

    20.  Based on my review of records for the PeakCap Account for January 2011 through April 2014, I have learned, among other things, the following:

a.    Notwithstanding his representations to investors that the Peak Entities handled "more than $21 million worth of investments," in truth and in fact, SCOTT A. BEATTY, the defendant, raised less than $1 million.

b.    Moreover, BEATTY misappropriated the majority of the money raised from investors for his personal use.  In total, BEATTY diverted more than $500,000 to himself, including more than $132,000 in cash withdrawals and more than $426,000 in debit card purchases, including at numerous restaurants and retail stores.

c.    In addition, BEATTY used new investor funds to pay back other investors in a Ponzi-like fashion.  In total, of the more than $825,000 in investor funds received by BEATTY, approximately $187,000 was used, not to buy and sell forex contracts, but to repay other investors.  For example, on or about April 1, 2013, the PeakCap Account received an incoming wire from a Japanese investor for $25,100.  None of this money was transferred to the PCMG Brokerage Account, or to any other trading account.  Instead, three days later, on or about April 4, 2013, $22,250 was wired to a different Japanese investor.

### BEATTY Lies to the CFTC

21.   Based on speaking with a representative of the CFTC, I have learned that in or about the summer and fall of 2013, SCOTT A. BEATTY, the defendant, sent a series of emails to the CFTC in response to certain CFTC subpoenas requesting information and documents concerning BEATTY and the Peak Entities.  Based on my review of those emails, I have learned that BEATTY made the following representations to the CFTC, in substance and in part:

a.    BEATTY claimed that he had made no attempt to solicit customers for any managed forex accounts or forex related products since 2010.

b.    BEATTY claimed that from 2010 until 2013, the Website was "merely a template" and did not result in any investors investing money with BEATTY or the Peak entities.

10

WHEREFORE, I respectfully request that an arrest warrant be issued for SCOTT A. BEATTY, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

ALEXANDER H. KURGANKSY
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me this
_18_ day of April, 2016

HONORABLE HENRY B. PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK